## IN THE UNITED STATES DISTRICT COURT OF MARYLAND
## NORTHERN DISTRICT

| | |
|---|---|
| SAMUEL GREEN | * |
| Plaintiff, | * |
| v. | *    Case No. 1:19-cv-01410-ELH |
| AMF BOWLING CENTERS, INC. | * |
| Defendant. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### DEFENDANT AMF BOWLING CENTERS, INC.'S
### OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND AMENDED
### COMPLAINT AND MOTION TO DISMISS

Defendant AMF Bowling Centers, Inc. ("Defendant" and/or "AMF Bowling"), by and through its undersigned counsel, WILSON ELSER MOSKOWITZ EDELMAN AND DICKER LLP, submits this Opposition to Plaintiff's Motion for Leave to Amend Amended Complaint and Motions to Dismiss for Failure to State a Claim and Failure to Prosecute and states as follows:

### I.      INTODUCTION AND FACTUAL ALLEGATIONS

Plaintiff Samuel ("Plaintiff") first filed his complaint with the Court on May 13, 2019, claiming that he slipped and fell on a wet floor while bowling at Defendant's alley in Lutherville Timonium, Maryland on June 6, 2016, which caused him to sustain personal injuries. *See* Compl. at ¶ 1-7.  Defendant asserted claims of: negligence; negligent hiring, training and retention;

1001398v.1

negligence based on res ipsa loquitur; and public nuisance against Defendant. *See id*.  On June 10, 2019, Defendant filed a Motion to Dismiss for Failure to State a Claim regarding Counts II, III, and IV, all claims aside from Claim I of negligence. *See* Def.'s June 10 Mot. to Dismiss.  In response to Defendant's Motion to Dismiss, Plaintiff filed a Motion to Amend his Complaint on June 23, 2019, where he removed claims II, III, and IV. *See* Pl.'s June 23 Mot. to Amend Compl. On July 9, 2019, the Court denied Defendant's Motion to Dismiss as moot, due to the Plaintiff voluntarily removing the contested claims.

On January 5, 2020, Plaintiff filed a motion seeking Leave to Amend Amended Complaint. *See* Pl.'s Mot. to Amend Sec. Am. Compl.  In this motion, Plaintiff seeks to add new facts to the claim of negligence and attempts to include three additional claims, including: Negligent Design and Construction of the Premises, Strict Liability/Products Liability, and Gross Negligence. *See id*. Plaintiff's Motion for Leave to Amend Amended Complaint states that the amendment is based on "significant factual and procedural developments" since the first amended complaint. *See id*. at 1. Plaintiff's motion also states that the additional claims are founded on "the theories raised by the parties respective experts" and; incredibly, states that because Defendant was aware of Plaintiff's November 9, 2019 expert opinion, they must have been aware of these newly pleaded theories of liability. *See id*. at 2.

On January 8, 2020, counsel for Defendant advised plaintiff's counsel of AMF's intent to oppose the Motion for Leave to Amend the Amended Complaint. On January 13, 2020, the Court issued an Order staying the case and requiring the parties to provide a status to the court within 45 days.  As set forth in Defendant's Motion to Vacate the Order Lifting the Stay, counsel for defendant contacted counsel for plaintiff on numerous occasion to determine the status of plaintiff's medical condition without reply.  In fact, plaintiff's counsel did not reply to two

additional emails on June 17, 2020 or July 8, 2020, and only provided an update regarding Plaintiff's April 17, 2020 discharge from the hospital at 9:30 p.m. on July 13, 2020. *See Exhibit 1, Email Correspondence, attached.* Defendant advised this Court in its July 13, 2020 filing that the instant Motion would be filed in accordance with the Court's Order.

On July 14, 2020, Defendant informed Plaintiff it intended to file this Opposition to Plaintiff's Motion for Leave to Amend Amended Complaint and Motions to Dismiss for Failure to State a Claim and Failure to Prosecute and invited Plaintiff to discuss the intended filing before it was submitted. Plaintiff waived any such discussion; although the parties intend to confer on July 22, 2020 to discuss ongoing discovery disputes. *Id*.

For the reasons set forth herein, and those appearing to this Honorable Court, Defendant requests that the Court grant its Motion, and deny the Motion for Leave to Amend, or in the alternative, dismiss the action in its entirety.

## II.    OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND AMENDED COMPLAINT

### A.  Standard of Review

Rule 15 of the Federal Rules of Civil Procedure governs when a party can file an amended complaint. FED. R. CIV. P. 15. As a matter of course, a party can file an amended pleading without leave of the court if the amended pleading is filed within 21 days of service or within 21 days after a responsive pleading is required and has been filed. FED. R. CIV. P. 15(a)(1). If it outside of 21 days, a party may file an amended pleading only with either written consent from the opposing party or leave by the court to file the amended pleading. FED. R. CIV. P. 15(a)(2).

Within the United States Court of Appeals for the Fourth Circuit, a district court may deny a motion to amend for reasons including "undue delay, bad faith or dilatory motive on the part of

the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009), (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

According to the Fourth Circuit, a proposed amendment should be denied as futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Additionally, a motion to amend can be denied on for futility where the proposed amendment "could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). A proposed amendment may be considered prejudicial when "it raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant]." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). This is particularly true when it adds additional facts or occurs after discovery has begun. *See Laber v. Harvey*, 438 F.3d 404, 426–427 (4th Cir. 2006).

## B. Argument(s)

### i. Undue Delay and Prejudice

Plaintiff filed his original Complaint just 24 days before the three year statute of limitations was set to expire. Eight months later, Plaintiff filed his Motion for Leave to add three additional claims. The case was then stayed for a period of 45 days to accommodate the plaintiff's unrelated medical condition, which apparently resolved as of April 17, 2020; however, plaintiff waited an additional three months to provide this information to Defendant; creating even further undue delay and prejudice against the Defendant. The three claims, Negligent Design and Construction of the Premises, Strict Liability/Products Liability, and Gross Negligence, differ significantly from both the existing claim of negligence, as well as the three claims previously pleaded, which

Plaintiff voluntarily removed from his complaint following Defendant's Motion to Dismiss. The existing negligence claim simply alleges Defendant slipped and fell on a wet floor while bowling. *See* Am. Compl. at 2. Plaintiff's complaint makes no mention of any claim stemming from the design or construction of the premises, of product liability, or of an action in reckless regard to the safety of the patrons. *See id.* Also, discovery has already been in motion for well over one-year at this point in the proceedings, including retention of experts who have completed their investigations and provided reports.

Allowing Plaintiff to add these three new legal theories over one year after Plaintiff last amended his complaint would require the gathering and analysis of facts, considerations, and expert opinions not already contemplated by the Defendant. The Defendant would be forced to spend additional time and resources to obtain expert opinions, as well as gather and analyze facts, on the design and construction of the bowling alley, whether the bowling lane was in a defective condition, and whether Defendant acted with reckless disregard. This matter is made further onerous by the fact that the incident occurred over four-years ago. Not only would the addition of the three new legal theories cause undue delay to the current proceedings, but this would also cause undue burden onto the Defendant.

Because Plaintiff is attempting to add new legal conclusions which would require the Defendant to gather and analyze additional facts, *see Johnson*, 785 F.2d at 510, and because the discovery process has been ongoing for over one-year, *see Laber*, 438 F.3d at 426–427, this Court should deny Plaintiff's Motion for Leave to Amend Amended Complaint because it would cause undue delay and prejudice on the Defendant.

## ii. Futility

Because Plaintiff's proposed claims are clearly insufficient on their face and based on erroneous facts, Plaintiff's Motion for Leave to Amend Amended Complaint should be denied on the basis of futility.   Plaintiff states that the newly proposed claims are founded upon both Plaintiff's and Defendant's expert witness reports, but Plaintiff does not state which specific facts necessitated the motion.   *See* Pl.'s Mot. to Amend Sec. Am. Compl. at 2.  The additional claims of Negligent Design and Construction of the Premises, Strict Liability/Products Liability, and Gross Negligence are seemingly premised on the incorrect claim that Defendant improperly placed oil in a position near the foul line of the bowling lane.   *See* Pl.'s Proposed Second Amended Complaint at 4.  Based on the facts included in the proposed Second Amended Complaint, the alleged fault of the Defendant is that oil was placed too closely to the foul line, leading to the slip and fall of the Plaintiff.  The expert report which is Plaintiff's basis for amending their complaint report does not state where the oil begins, but it does provides a recommendation to Defendant that if they did not place oil within first 12 inches of the foul line, this could eliminate "a conservative estimate [of] 100% of all slips, falls, and injuries. . . ." See Pl.'s Expert Report at 6, appended to Pl.'s Motion for Leave to Amend.

What Plaintiff nor his expert address is the fact that Defendant does not place oil within the first 12 inches of the lane adjacent to the foul line, and in fact, it is Defendant's standard procedure to not begin oiling the bowling lane until 24 inches beyond the foul line.  *See Exhibit 2,* Def.'s Aff.  Defendant's procedure greatly exceeds the recommendation of Plaintiff's own expert, and undercuts any argument Plaintiff may make regarding Defendant's negligence.  By Plaintiff's expert's own recommendation, Defendant could not be found liable for Negligent Design and Construction of the Premises, Strict Liability/Products Liability, nor gross negligence because the

design and construction of the bowling lane took exceedingly vigilant safety precautions beyond what would reduce ". . . 100% of all slips, falls, and injuries. . . ." Pl.'s Expert Report at 6. Plaintiff has been in possession of this information since the production of Defendant's Responses to Request for Production of Documents on October 3, 2019. *See Exhibit 3, AMF 41-52 Approach Maintenance.* In addition this practice was detailed in Defendant's Expert Brian Mills, P.E.'s report produced and filed on December 9, 2019. *See Exhibit 4, Defendant's Rule 26(a)(2) Designation.*

Courts have found that Motions for Leave to Amend that are based on clearly erroneous facts or legal conclusions to be a basis for denying the motion. *Silver v. Glass*, No. 11CV0256 BB/KBM, 2011 WL 13174555, at \*4 (D.N.M. July 8, 2011), aff'd, 459 F. App'x 691 (10th Cir. 2012). This Court should follow suite, and deny Plaintiff's Motion for Leave to Amend Amended Complaint because no cause of action could exist based on the factual basis for the proposed claims that Defendant improperly oiled the bowling lanes. The predicate factual support for the claims is erroneous and insufficient, and the claims should not be allowed to stand.

## III.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.  Standard of Review

When considering a motion under Rule 12(b)(6), a court focuses on the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Courts "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "However, to survive a Rule 12(b)(6) motion, factual allegations must be enough to raise a right to relief above the speculative level, with the complaint having enough facts to state a claim to relief that is plausible on its face." *Smith v.*

*McCarthy*, 349 Fed. Appx. 851, 856 (4th Cir. 2009) (citing and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (quotation omitted)).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient."  *Id*. at 856 (citing and quoting *Ashcroft v. Iqbal*, [556 U.S. 662], 129 S. Ct. 1937, 1949 (2009) (quotation omitted)).

In evaluating a complaint, a court "need not accept unsupported legal allegations." *Hosack v. Utopian Wireless Corp.*, No. DKC 11–0420, 2011 U.S. Dist. LEXIS 48687, at \*5 (D.Md. May 6, 2011) (citing *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989)).  "Nor must it agree with legal conclusions couched as factual allegations," or "conclusory factual allegations devoid of any reference to actual events."  *Id*. at \*6 (citing *Iqbal,* 129 S. Ct. at 1950 and *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979)). "A complaint may survive a motion to dismiss only if it 'states a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'"  *McCarthy*, 349 Fed. Appx. at 856 (citing and quoting *Iqbal*, 129 S. Ct. at 1950, and *Twombly*, 550 U.S. at 556).

### A. Argument

#### a. Counts II and III

Plaintiff has not sufficiently plead allegations to support any form of defect on the part of Defendant's premises to support a claim for Negligent Design and Construction of the Premises and Strict Liability/Products Liability.  Both of these claims fall under the general umbrella of product liability.  Under both a strict liability theory and a negligence theory of product liability, which encompasses both Counts II and III of Plaintiff's proposed claims, a plaintiff must show

"defect, attribution of defect to seller [or manufacturer], and a causal relationship between the defect and the injury." *Laing v. Volkswagen of Am., Inc.*, 180 Md.App. 136, 949 A.2d 26, 39 (Md. Ct. Spec. App.2008) (citing *Ford Motor Co. v. Gen. Accident Ins. Co.*, 365 Md. 321, 779 A.2d 362, 369–70 (2001)). Under Maryland law, the negligence theory of product liability is similar to that of the strict liability theory, but differs in that the "negligence theory focuses on the conduct of the defendant, while the strict liability theory of products liability focuses primarily on the product. *Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 780 (D. Md. 2012).

  One of two tests must be utilized by a plaintiff to prove a products liability claim, whether it is a strict liability claim as is Count III or a claim under negligence as is Count II. *Thompson v. Ethicon, Inc.*, No. CV SAG-19-03159, 2020 WL 3893253, at \*4 (D. Md. July 10, 2020). The first is the consumer expectations test. *See Thompson v. Ethicon, Inc.*, No. CV SAG-19-03159, 2020 WL 3893253, at \*4 (D. Md. July 10, 2020). Under this test, "a plaintiff must show that the product was sold in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." *Id*. at 4 (internal citations omitted). The second test is the unreasonably dangers test, which is defined as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics." *Id*. at 4 (internal citations omitted).

  Plaintiff has failed to adequately state a claim of Negligent Design and Construction of the Premises or Strict Liability/Products Liability under either test and attempts to stretch the traditional use of these claims to fit a set of facts that would not normally fall under a products liability claim. Under the unreasonably dangerous test, Plaintiff's own expert report incorporated in the Motion for Leave to Amend Amended Complaint stated that usage of oil beginning at 12

inches from the foul line would be an adequate precaution to reduce ". . . 100% of all slips, falls, and injuries. . . ." Pl.'s Expert Report at 6. Plaintiff's proposed Second Amended Complaint does not state where it alleges the oil placed on the lane is placed, and instead, states only that a bowler's left toe could come into contact with the oil if the oil "inadvertently cover[s] part of the foul line without notice. . . ." Pl.'s Mot. to Amend Sec. Am. Compl. at 9. As stated earlier, Defendant does not begin to place oil until 24 inches beyond the foul line, doubling the conservative safety standard recommended by Plaintiff's expert. *See Exhibit 2,* Def.'s Aff. It cannot be stated that something as precautious as this standard procedure could be unreasonably "dangerous to an extent beyond that which would be contemplated by the ordinary consumer." *Thompson* 2020 WL 3893253, at *4. Additionally, Plaintiff's claims fail under the consumer expectations test under the same argument. The conditions of the bowling lane could not be "unreasonably dangerous" because they went beyond Plaintiff's expert's recommendation on safety. *See Id.* As both Plaintiff's and Defendant's expert reports state, the use of oil on bowling lanes is standard. *See* Pl.'s Expert Report; Def.'s Expert Report. Because oil is standard within the industry, a reasonable consumer would know of the risk of oil on the bowling lanes, and would take reasonable precautions to avoid it.

Finally, Plaintiff has not plead with adequate facts that oil was even the cause of the fall. Plaintiff's first complaint and amended complaint specify that Plaintiff slipped on the "wet floor," and do not mention the existence of oil. Plaintiff's proposed amended complaint utilizes only conjecture and guessing to support the conclusion that oil near the foul line was the cause of the fall, stating only that "oil can inadvertently cover part of the foul line without notice, resulting in potential injury to the business invitees." Pl.'s Mot. to Amend Sec. Am. Compl. at 6. Plaintiff's Complaint, nor any amendments to the Complaint, reference any substance found on Plaintiff's

shoe or a factual investigation of whether oil was, in fact, near the foul line. This conjecture is not sufficient to raise the right of relief to above the speculative level required to survive a 12(b)(6) motion to dismiss and should, therefore, be dismissed. Smith, 349 Fed. Appx. at 856 (citing and quoting Twombly, 550 U.S. at 555, 570).

### b. Count III

Plaintiff has failed to plead with adequate facts a claim for gross negligence because it does not show Defendant intentionally failed to perform a manifest duty. Under Maryland law, "gross negligence is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Beall v. Holloway-Johnson*, 446 Md. 48, 64, 130 A.3d 406, 415 (2016) (internal citations omitted).

As stated throughout this motion, Plaintiff's own expert report supports a finding that Defendant's procedures on oiling the bowling lanes go above and beyond what would be required to maintain adequate safety of the bowling lanes, while still allowing the bowling lanes to be used as intended. Pl.'s Expert Report at 6. Because Defendant does not begin to use oil on the bowling lanes until 24 inches beyond the foul line, a procedure that far exceeds Plaintiff's expert's recommendation of 12 inches, it cannot be said that Defendant acted to intentionally or utterly indifferent to the rights of others. *See Exhibit 2, Def.'s Aff.* Instead, Defendant's actions should be commended for creating a safer requirement for its patrons than is required, and for

hopefully pushing the safety standards of the bowling industry forward to create for a safer bowling experience.

## IV.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED FOR FAILURE TO PROSECUTE

### A. Standard of Review

Rule 41(b) of the Federal Rules of Civil Procedure provides that a defendant may seek dismissal of an action or any claim within an action if the plaintiff fails to prosecute. FED. R. CIV. P. 41(b). District courts must take four factors into account in deciding whether Rule 41(b) dismissal is appropriate as a sanction: "(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a 'drawn out history of deliberately proceeding in a dilatory fashion,' and (4) the existence of sanctions less drastic than dismissal." *Stratagene v. Invitrogen Corp*., 206 F.R.D. 121, 122 (D. Md. 2002) (quoting *Herbert v. Saffell*, 877 F.2d 267, 269–70 (4th Cir. 1989).

### B. Argument

Plaintiff has failed to properly prosecute his claims against Defendant, and as such, this Court should dismiss Plaintiff's complaint in its entirety. Plaintiff has repeatedly been unresponsive to Defendant's attempts to contact. As the Court is aware from Defendant's Motion to Vacate Order, Plaintiff was unresponsive between January 13, 2020 and June 11, 2020 to Defendant's communications requesting information regarding Plaintiff's medical condition. *See* Def.'s Mot. to Vacate at 2. Plaintiff was again unresponsive until the late evening of July 13, 2020, at which time it was revealed that the Plaintiff had been discharged three months prior. Plaintiff failure to respond to Defendant's communications regarding Plaintiff's health disallowed

Defendant from apprising the Court of the Plaintiff's medical status. This led to the Court lifting he stay and granting Plaintiff's Motion for Leave to Amend Amended Complaint.

When examining Plaintiff's actions under the four factors provided in *Herbert*, it is clear that dismissal for failure to prosecute is an appropriate remedy. First, Plaintiff and his counsel were responsible for the delays in the case and failure to prosecute. Plaintiff, though his counsel, filed his complaint 24 days before the statute expired and is now attempting to add new claims 8 months later. For several months after the case was stayed due to an unrelated medical condition, plaintiff did not respond to numerous communications from Defendant's counsel. This responsibility falls entirely on the shoulders of the Plaintiff and cannot be contributed elsewhere. Second, Plaintiff's failure to prosecute led to prejudice against the Defendant because the lack of communication inhibited Defendant from filing the joint status report on Plaintiff's medical condition required by the Court in its January 13, 2020 order. *See* Jan. 20 Order. Because Plaintiff was unresponsive to Defendant's communications and Defendant was, therefore, unable to apprise the Court on Plaintiff's medical condition, the Court granted Plaintiff's Motion for Leave to Amend Amended Complaint. This then required Defendant to expend time and resources to file a Motion to Vacate the Order. As to the third factor, Plaintiff has, as stated, repeatedly been unresponsive and dilatory towards Defendant's communications and attempts to move the case forward. On more than three occasions Plaintiff has failed to respond to direct communications attempting to further the case and provide the Court with the information it has ordered the parties to furnish. There has been a drawn out history of this behavior throughout the duration of this action. While other sanctions may be appropriate for Plaintiff's failure to prosecute, the repeated dilatory actions by the Plaintiff and his counsel make dismissal the appropriate action. Because

three out of four factors weigh heavily in favor of the defendant, the Court should dismiss Plaintiff's action for failure to prosecute.

WHEREFORE, Defendant respectfully requests this Honorable Court deny Plaintiff's Motion for Leave for Leave to Amend Amended Complaint, grant Defendant's Motions to Dismiss for Failure to State and Claim and Failure to Prosecute, and provide other such relief this Court deems necessary and proper.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP

By:     __*/s/ Brigitte Smith*_____
        Brigitte Smith (Fed. Bar No. 28426)
        Brigitte.Smith@wilsonelser.com
        500 E. Pratt Street, Suite 600
        Baltimore, MD 21202-3173
        Tel. 410-962-7387
        Fax. 410-962-8758
        *Counsel to Defendant, AMF Bowling Centers, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 20th day of July, 2020, a copy of the foregoing Defendant

AMF Bowling Centers, Inc.'s Opposition to Plaintiff's Motion to Amend Amended Complaint

and Motions to Dismiss for Failure to State a Claim and Failure to Prosecute was served via the

Court's ECF filing system, to all counsel of record, as follows:

Kim Parker, Esquire
The Law Offices of Kim Parker, P. A.
Fed. Bar No.:23894
2123 Maryland Avenue
Baltimore, Maryland 21218
410-234-2621
kp@kimparkerlaw.com

Jesse Lyons Crawford, Esquire
The Law Offices of Jessie Lyons Crawford
Fed. Bar No.: 25247
2601 Maryland Avenue
Baltimore, Maryland 21218
410-662-1230
attorneyjlcrawford@verizon.net

*Counsel for Plaintiff*

By:     \_\_*/s/ Brigitte J. Smith*_____
Brigitte J. Smith