# IN THE UNITED STATES DISTRICT COURT OF MARYLAND
# NORTHERN DISTRICT

| | | |
|---|---|---|
| SAMUEL GREEN | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:19-cv-01410-ELH |
| AMF BOWLING CENTERS, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S OBJECTIONS TO PLAINTIFF'S SUBPOENA TO NON-PARTY ESIS, INC. TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES

Defendant, AMF Bowling Centers, Inc. (the "Defendant" or "AMF"), by and through its undersigned counsel, WILSON ELSER MOSKOWITZ EDELMAN AND DICKER LLP, pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), hereby objects to Plaintiff's Subpoena to Non-Party ESIS, Inc. ("ESIS") to Produce Documents, Information, or Objects or to Permit Inspection of Premises.[1] In support thereof, AMF states as follows:

### INTRODUCTION AND BACKGROUND

This case arises from Plaintiff's alleged trip and fall at a bowling alley owned by AMF.

---

[1] "A party has standing to challenge a subpoena served on a third party if 'the party claims some personal right or privilege in the information sought by the subpoena.'" *Richardson v. Sexual Assault/Spouse Abuse Research Ctr., Inc.*, 270 F.R.D. 223, 226 n.2 (D. Md. 2010) (quoting *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)). Here, AMF is claiming a personal right and privilege in the documents sought by the Plaintiff's Subpoena to ESIS, including the work product doctrine, and thus, AMF has standing to file these Objections.

On July 28, 2020, the parties attended a hearing regarding various discovery disputes and related scheduling. On the same date, this Court issued an Order memorializing the discussion during the hearing. *See* Doc. No. 59. In particular, the Order stated, in relevant part, that by August 5, 2020, AMF will provide the Plaintiff with a privilege log with regard to documents responsive to the Plaintiff's Requests that AMF is withholding on the basis of a privilege or protection. *Id.*

On September 2, 2019, Plaintiff served Requests for Production of Documents to Defendant. AMF timely served the following Responses, in relevant part:

> **REQUEST NO. 1:** The entire claims and investigation file or files including but not limited to daily activity sheets, diary sheets, and status sheets of any insurance adjuster and/or risk employee/manager, internal memoranda regarding this claim created, sent and/or received by any insurance adjuster or other adjuster, risk employee/manager and/or by the Defendant(s) or an agent/employee of the Defendant(s), communications to and from all insurance carriers, parties, Defendant(s), or potential parties, request(s) for investigation, and/or reports findings of investigators, both in-house and/or independent and/or all insurance policies of the Defendant(s), excluding references to mental impressions, conclusions, or opinions representing the value or merit of the claim or defense or respecting the strategy or tactics and privileged communications from counsel.
>
> RESPONSE TO REQUEST NO. 1: **Defendant states that it is self-insured for this matter up to $500,000. Defendant states that it referred this matter to its insurer, which assigned it to a third party claims administrator, ESIS, in response to a letter of representation from Plaintiff's counsel dated June 27, 2016, which was less than one month after the subject occurrence. Defendant states that the ESIS claim file is privileged and that it was created in anticipation of litigation, and in response to a notice of a claim by Plaintiff Green through his counsel. Without waiving any such privilege, Defendant is willing to produce certain portions of the claim file, including the Incident Report of the subject occurrence, the video of the occurrence, and pre-suit written communications between Plaintiff's counsel and representatives of ESIS.**
>
> **REQUEST NO. 2:** All statements and communications of any and all witnesses including any and all statements of Plaintiff(s) and Defendant(s), including taped recordings, whether transcribed or not, as well as written statements.

RESPONSE TO REQUEST NO. 2: **Defendant is producing herewith the Incident Report and video footage of the occurrence. Defendant is not in possession of any statements by the Plaintiff or any bystander witnesses as this term is understood.**

. . . .

**REQUEST NO. 5:** Copies of any and all photographs, diagrams, drawings, charts, models, movie films or video-tapes which relate, refer or pertain to Plaintiff(s), any other part to this action, the incident site and/or any instrumentality involved in the incident described in Plaintiff(s) Complaint.

RESPONSE TO REQUEST NO. 5: **Defendant is producing herewith the Incident Report for the occurrence, which includes photographs, as well as the video footage of the occurrence.**

. . . .

**REQUEST NO. 8:** Any and all documents of any nature whatsoever which refer in any way to the incident described in Plaintiff(s) Complaint and/or the facts or circumstances leading up to and following said incident.

RESPONSE TO REQUEST NO. 8: **Defendant objects to this Request as vague and overbroad. Defendant is producing herewith a number of documents which bear on Plaintiff's allegations in this lawsuit.**

. . . .

**REQUEST NO. 10:** Any and/or all documents or communications of any nature whatsoever which relate, refer or pertain to Plaintiff(s), any other party to this action, the incident, incident site and/or any instrumentality involved in the incident described in Plaintiff(s) Complaint.

RESPONSE TO REQUEST NO. 10: **Defendant objects to this Request as vague and overbroad. Without waiving this objection, Defendant is producing herewith the Incident Report of the subject occurrence, the video of the occurrence, and pre-suit written communications between Plaintiff's counsel and representatives of ESIS.**

. . . .

**REQUEST NO. 15:** Copies of any policies and/or procedures with respect to safety in effect on the date of the occurrence.

RESPONSE TO REQUEST NO. 15: **Defendant objects because this Request is vague and not properly limited in time or scope. Without waiving these objections, Defendant refers Plaintiff to its Operating Standards concerning Approach Maintenance; Preventative Maintenance – Lanes and Related Equipment; Center Safety – General; and Guest Incidents.**

**REQUEST NO. 16:** Copies of all manuals for employees in effect on the date of the occurrence.

RESPONSE TO REQUEST NO. 16: **Defendant objects because this Request is vague and not properly limited in time or scope. Without waiving these objections, Defendant refers Plaintiff to its Operating Standards concerning Approach Maintenance; Preventative Maintenance – Lanes and Related Equipment; Center Safety – General; and Guest Incidents.**

. . . .

**REQUEST NO. 19:** If any surveillance has been taken by or on behalf of AMF, produce a copy of all reports, photographs, communications, video and anything else generated through that investigation.

RESPONSE TO REQUEST NO. 19: **Defendant is not in possession of any surveillance of the Plaintiff as that term is understood, except the video footage of the occurrence, which is being produced herewith.**

. . . .

**REQUEST NO. 21:** Copies of any and all insurance policies and related documents, including the declaration pages, which do or may afford liability insurance coverage to Defendant with regard to Plaintiff's claims against Defendant. This request includes primary insurance coverage, excess insurance coverage, or any other type of liability insurance coverage, medical-payments coverage, and documents regarding reservation of rights for the same.

RESPONSE TO REQUEST NO. 21: **Defendant states that it is self-insured for this occurrence up to $500,000.**

Defendant AMF Bowling Centers, Inc.'s Responses to Plaintiff's First Requests for Production of Documents, attached as **Exhibit 1**.

On the same date, the Plaintiff served a Notice of Intent to Serve Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises on AMF's insurer's third-party administrator, ESIS. *See* Doc. No. 58. The Plaintiff requested a number of the same documents that Plaintiff requested from AMF. *See id*.

On August 5, 2020, AMF provided the Plaintiff with a privilege log and supplemental document production in accordance with this Court's July 28, 2020 Order. The privilege log concerned documents from ESIS's claim file being withheld on the basis of the work product doctrine and attorney-client privilege. AMF is now making the below Objections to the same documents that the Plaintiff is improperly attempting to obtain through its Subpoena to ESIS.

**OBJECTIONS**

1. All non-privileged documents, in your possession, regarding your claim number 2A692202733830.

**OBJECTION: AMF objects to this request to the extent that it seeks documents protected by the work product doctrine. Although this request states that it seeks all "non-privileged" documents in ESIS's possession regarding the applicable claim number, it is unclear if it excludes documents protected by the work product doctrine. To be sure, ESIS, the third-party administrator for AMF's insurer, has documents regarding the applicable claim number that are protected by the work product doctrine, i.e., documents concerning ESIS's investigation of this matter in anticipation of litigation. This includes documents dated from at least as early as around June 2017 onward, because in June 2017, the Plaintiff's counsel advised ESIS that it would be filing suit, which indisputably caused ESIS to reasonably anticipate litigation. Indeed, even prior to June 2017, ESIS could have reasonably anticipated litigation because, among other things, the Plaintiff hired an attorney, declined to provide a recorded statement or medical or employment records, declined to engage in settlement negotiations, and allegedly suffered extremely severe injuries. Responsive documents protected by the work product doctrine include, for instance, internal communications regarding the initial strategy and/or fact investigation for handling the Plaintiff's claim; internal communications in anticipation of litigation regarding the assessment of the amount of reserves and legal expenses; and communications following the Plaintiff's filing suit.**

2. The entire claims and investigation file or files including but not limited to daily activity sheets, diary sheets, and status sheets of any insurance adjuster and/or risk

employee/manager, internal memoranda regarding this claim created, sent and/or received by any insurance adjuster or other adjuster, risk employee/manager and/or by the Defendant(s) or an agent/employee of the Defendant(s), communications to and from all insurance carriers, parties, Defendant(s), or potential parties, request(s) for investigation, and/or reports/findings of investigators, both in-house and/or independent and/or all insurance policies of the Defendant(s), **EXCLUDING REFERENCES TO MENTAL IMPRESSIONS, CONCLUSIONS, OR OPINIONS REPRESENTING THE VALUE OR MERIT OF THE CLAIM OR DEFENSE OR RESPECTING STRATEGY OR TACTICS AND PRIVILEGED COMMUNICATIONS FROM COUNSEL.**

**OBJECTION: AMF objects to this request to the extent that it seeks documents protected by the work product doctrine. Although this request states that it does not seek references to mental impressions, conclusions, or opinions representing the value or merit of the claim or defense or respecting strategy or tactics, it does not state that it does not seek any documents protected by the work product doctrine, and ESIS objects to the extent that any such protected documents are not covered by the request's exclusion. To be sure, ESIS, the third-party administrator for AMF's insurer, has documents regarding the applicable claim number that are protected by the work product doctrine, i.e., documents concerning ESIS's investigation of this matter in anticipation of litigation. This includes documents dated from at least as early as around June 2017 onward, because in June 2017, the Plaintiff's counsel advised ESIS that it would be filing suit, which indisputably caused ESIS to reasonably anticipate litigation. Indeed, even prior to June 2017, ESIS could have reasonably anticipated litigation because, among other things, the Plaintiff hired an attorney, declined to provide a recorded statement or medical or employment records,**

1003183v.1

**declined to engage in settlement negotiations, and allegedly suffered extremely severe injuries. Responsive documents protected by the work product doctrine include, for instance, internal communications regarding the initial strategy and/or fact investigation for handling the Plaintiff's claim; internal communications in anticipation of litigation regarding the assessment of the amount of reserves and legal expenses; and communications following the Plaintiff's filing suit.**

3. All statements and communications of any and all witnesses including any and all statements of Plaintiff(s) and Defendant(s), including taped recordings, whether transcribed or not, as well as all written statements, **EXCLUDING REFERENCES TO MENTAL IMPRESSIONS, CONCLUSIONS, OR OPINIONS REPRESENTING THE VALUE OR MERIT OF THE CLAIM OR DEFENSE OR RESPECTING STRATEGY OR TACTICS AND PRIVILEGED COMMUNICATIONS FROM COUNSEL.**

**OBJECTION: AMF objects to this request to the extent that it seeks documents protected by the work product doctrine. Although this request states that it does not seek references to mental impressions, conclusions, or opinions representing the value or merit of the claim or defense or respecting strategy or tactics, it does not state that it does not seek any documents protected by the work product doctrine, and ESIS objects to the extent that any such protected documents are not covered by the request's exclusion. To be sure, ESIS, the third-party administrator for AMF's insurer, has documents regarding the applicable claim number that are protected by the work product doctrine, i.e., documents concerning ESIS's investigation of this matter in anticipation of litigation. This includes documents dated from at least as early as around June 2017 onward, because in June 2017, the Plaintiff's counsel advised ESIS that it would be filing suit, which indisputably caused ESIS**

1003183v.1

to reasonably anticipate litigation. Indeed, even prior to June 2017, ESIS could have reasonably anticipated litigation because, among other things, the Plaintiff hired an attorney, declined to provide a recorded statement or medical or employment records, declined to engage in settlement negotiations, and allegedly suffered extremely severe injuries. Responsive documents protected by the work product doctrine include, for instance, internal communications regarding the initial strategy and/or fact investigation for handling the Plaintiff's claim; internal communications in anticipation of litigation regarding the assessment of the amount of reserves and legal expenses; and communications following the Plaintiff's filing suit.

4. Copies of any and all photographs, diagrams, drawings, charts, models, movie films or video-tapes which relate, refer or pertain to Plaintiff(s), any other party to this action, the incident site and/or any instrumentality involved in this incident described in Plaintiff(s) Complaint, **EXCLUDING REFERENCES TO MENTAL IMPRESSIONS, CONCLUSIONS, OR OPINIONS REPRESENTING THE VALUE OR MERIT OF THE CLAIM OR DEFENSE OR RESPECTING STRATEGY OR TACTICS AND PRIVILEGED COMMUNICATIONS FROM COUNSEL.**

OBJECTION: ESIS objects to this request on the basis that it is overly broad, unduly burdensome, and not relevant to any party's claim or defense, nor reasonably calculated to lead to the discovery of admissible evidence. In particular, not every document that refers or pertains to the Defendant, the bowling alley where the slip and fall occurred, or any "instrumentality involved in the incident" is relevant to any party's claim or defense, nor is every such document reasonably calculated to lead to the discovery of admissible evidence. As an insurer of the Defendant for any number of possible claims, ESIS has documents that

concern the Defendant and bowling alley that have no relation whatsoever to the slip and fall at issue in this case. ESIS may also have documents that concern any "instrumentality involved in the incident" that have no relation whatsoever to the slip and fall at issue in this case. For these same reasons, this request is overly broad and unduly burdensome, especially for a non-party. The request further is not proportional to the needs of the case due to the complete irrelevance of documents sought and the undue burden and expense that would be imposed on ESIS to search for and produce every such document.

ESIS further objects to this request on the basis that it is vague because it is unclear what the phrase "instrumentality involved in the incident" means. The incident at issue is a slip and fall that the Plaintiff alleges occurred as a result of liquid that was present on the floor. It is unclear what "instrumentality" may have been involved in such a trip and fall, and the Subpoena does not define the term "instrumentality."

5. Any and all documents of any nature whatsoever which refer in any way to the incident described in Plaintiff(s) Complaint and/or the facts or circumstances leading up to and following said incident, **EXCLUDING REFERENCES TO MENTAL IMPRESSIONS, CONCLUSIONS, OR OPINIONS REPRESENTING THE VALUE OR MERIT OF THE CLAIM OR DEFENSE OR RESPECTING STRATEGY OR TACTICS AND PRIVILEGED COMMUNICATIONS FROM COUNSEL.**

**OBJECTION:** AMF objects to this request to the extent that it seeks documents protected by the work product doctrine. Although this request states that it does not seek references to mental impressions, conclusions, or opinions representing the value or merit of the claim or defense or respecting strategy or tactics, it does not state that it does not seek any documents protected by the work product doctrine, and ESIS objects to the extent that

1003183v.1

**any such protected documents are not covered by the request's exclusion. To be sure, ESIS, the third-party administrator for AMF's insurer, has documents regarding the applicable claim number that are protected by the work product doctrine, i.e., documents concerning ESIS's investigation of this matter in anticipation of litigation. This includes documents dated from at least as early as around June 2017 onward, because in June 2017, the Plaintiff's counsel advised ESIS that it would be filing suit, which indisputably caused ESIS to reasonably anticipate litigation. Indeed, even prior to June 2017, ESIS could have reasonably anticipated litigation because, among other things, the Plaintiff hired an attorney, declined to provide a recorded statement or medical or employment records, declined to engage in settlement negotiations, and allegedly suffered extremely severe injuries. Responsive documents protected by the work product doctrine include, for instance, internal communications regarding the initial strategy and/or fact investigation for handling the Plaintiff's claim; internal communications in anticipation of litigation regarding the assessment of the amount of reserves and legal expenses; and communications following the Plaintiff's filing suit.**

6. Any and/or all documents or communications of any nature whatsoever which relate, refer or pertain to Plaintiff(s), any other party to this action, the incident, incident site and/or any instrumentality involved in the incident described in Plaintiff(s) Complaint, **EXCLUDING REFERENCES TO MENTAL IMPRESSIONS, CONCLUSIONS, OR OPINIONS REPRESENTING THE VALUE OR MERIT OF THE CLAIM OR DEFENSE OR RESPECTING STRATEGY OR TACTICS AND PRIVILEGED COMMUNICATIONS FROM COUNSEL.**

**OBJECTION:** AMF objects to this request to the extent that it seeks documents protected by the work product doctrine. Although this request states that it does not seek references to mental impressions, conclusions, or opinions representing the value or merit of the claim or defense or respecting strategy or tactics, it does not state that it does not seek any documents protected by the work product doctrine, and ESIS objects to the extent that any such protected documents are not covered by the request's exclusion. To be sure, ESIS, the third-party administrator for AMF's insurer, has documents regarding the applicable claim number that are protected by the work product doctrine, i.e., documents concerning ESIS's investigation of this matter in anticipation of litigation. This includes documents dated from at least as early as around June 2017 onward, because in June 2017, the Plaintiff's counsel advised ESIS that it would be filing suit, which indisputably caused ESIS to reasonably anticipate litigation. Indeed, even prior to June 2017, ESIS could have reasonably anticipated litigation because, among other things, the Plaintiff hired an attorney, declined to provide a recorded statement or medical or employment records, declined to engage in settlement negotiations, and allegedly suffered extremely severe injuries. Responsive documents protected by the work product doctrine include, for instance, internal communications regarding the initial strategy and/or fact investigation for handling the Plaintiff's claim; internal communications in anticipation of litigation regarding the assessment of the amount of reserves and legal expenses; and communications following the Plaintiff's filing suit.

ESIS further objects to this request on the basis that it is overly broad, unduly burdensome, and not relevant to any party's claim or defense, nor reasonably calculated to lead to the discovery of admissible evidence. In particular, not every document that refers

or pertains to the Defendant, the bowling alley where the slip and fall occurred, or any "instrumentality involved in the incident" is relevant to any party's claim or defense, nor is every such document reasonably calculated to lead to the discovery of admissible evidence. As an insurer of the Defendant for any number of possible claims, ESIS has documents that concern the Defendant and bowling alley that have no relation whatsoever to the slip and fall at issue in this case. ESIS may also have documents that concern any "instrumentality involved in the incident" that have no relation whatsoever to the slip and fall at issue in this case. For these same reasons, this request is overly broad and unduly burdensome, especially for a non-party. The request further is not proportional to the needs of the case due to the complete irrelevance of documents sought and the undue burden and expense that would be imposed on ESIS to search for and produce every such document.

ESIS further objects to this request on the basis that it is vague because it is unclear what the phrase "instrumentality involved in the incident" means. The incident at issue is a slip and fall that the Plaintiff alleges occurred as a result of liquid that was present on the floor. It is unclear what "instrumentality" may have been involved in such a trip and fall, and the Subpoena does not define the term "instrumentality."

7. Copies of ALL polices and/or procedures IN YOUR POSSESSION with respect to safety from your insured in effect on June 5, 2016.

**OBJECTION:** ESIS objects to this request on the basis that it is overly broad, unduly burdensome, and not relevant to any party's claim or defense, nor reasonably calculated to lead to the discovery of admissible evidence. In particular, not every policy or procedure of the Defendant is relevant to any party's claim or defense, nor is every policy or procedure reasonably calculated to lead to the discovery of admissible evidence. For instance, a policy

1003183v.1

**or procedure concerning fires or any number of other safety issues has no relation whatsoever to the trip and fall at issue in this case. For these same reasons, this request is overly broad and unduly burdensome, especially for a non-party. The request further is not proportional to the needs of the case due to the complete irrelevance of documents sought and the undue burden and expense that would be imposed on ESIS to search for and produce every such document.**

8. Copies of all manuals IN YOUR POSSESSION for your insureds employees from 2015-2016.

**OBJECTION: ESIS objects to this request on the basis that it is overly broad, unduly burdensome, and not relevant to any party's claim or defense, nor reasonably calculated to lead to the discovery of admissible evidence. In particular, not every employee manual of the Defendant is relevant to any party's claim or defense, nor is every employee manual reasonably calculated to lead to the discovery of admissible evidence. For instance, an employee manual concerning discrimination, harassment, or any number of other matters has no relation whatsoever to the trip and fall at issue in this case. For these same reasons, this request is overly broad and unduly burdensome, especially for a non-party. The request further is not proportional to the needs of the case due to the complete irrelevance of documents sought and the undue burden and expense that would be imposed on ESIS to search for and produce every such document.**

9. If any surveillance has been undertaken by or on behalf of AMF, produce a copy of all reports, photographs, communications, video and anything else generated through that investigation regarding this claim.

**OBJECTION:** ESIS objects to this request on the basis that it seeks documents protected by the attorney-client privilege and work product doctrine. To be sure, at least some documents generated through any surveillance undertaken by or on behalf of the Defendant are protected by the attorney-client privilege and the work product doctrine. Documents protected by the attorney-client privilege include any confidential communications between counsel for the Defendant and the Defendant or the Defendant's agents concerning any such surveillance. Documents protected by the work product doctrine include documents dated from at least as early as around June 2017 onward, because in June 2017, the Plaintiff's counsel advised ESIS that it would be filing suit, which indisputably caused ESIS to reasonably anticipate litigation. Indeed, even prior to June 2017, ESIS could have reasonably anticipated litigation because, among other things, the Plaintiff hired an attorney, declined to provide a recorded statement or medical or employment records, declined to engage in settlement negotiations, and allegedly suffered extremely severe injuries. Responsive documents protected by the work product doctrine include, for instance, internal communications regarding the initial strategy and/or fact investigation for handling the Plaintiff's claim; internal communications in anticipation of litigation regarding the assessment of the amount of reserves and legal expenses; communications following the Plaintiff's filing suit.

10. Copies of any and all insurance policies and related documents, IN YOUR POSSESSION including the declaration pages, effective on June 5, 2016, with respect to your insured or client. This request includes primary insurance coverage, excess insurance coverage, or any other type of liability insurance coverage, medical-payments coverage, and documents regarding reservation of rights for the same.

1003183v.1

**OBJECTION: ESIS objects to this request on the basis that it is overly broad, unduly burdensome, and not relevant to any party's claim or defense, nor reasonably calculated to lead to the discovery of admissible evidence. In particular, the entire insurance policy or policies covering the slip and fall at issue in this case is not relevant to any party's claim or defense, because if the policy admittedly covers the slip and fall, the only information relevant to the Plaintiff is the amount of the coverage, which is listed in the declaration page(s). For these same reasons, this request is overly broad and unduly burdensome, especially for a non-party. The request further is not proportional to the needs of the case due to the complete irrelevance of documents sought and the undue burden and expense that would be imposed on ESIS to search for and produce every such document.**

11.  Produce all email communications with respect to this claim in its "Native Format" **"EXCLUDING REFERENCES TO MENTAL IMPRESSIONS, CONCLUSIONS, OR OPINIONS REPRESENTING THE VALUE OR MERIT OF THE CLAIM OR DEFENSE OR RESPECTING STRATEGY OR TACTICS AND PRIVILEGED COMMUNICATIONS FROM COUNSEL".**

**OBJECTION: AMF objects to this request to the extent that it seeks documents protected by the work product doctrine. Although this request states that it does not seek references to mental impressions, conclusions, or opinions representing the value or merit of the claim or defense or respecting strategy or tactics, it does not state that it does not seek any documents protected by the work product doctrine, and ESIS objects to the extent that any such protected documents are not covered by the request's exclusion. To be sure, ESIS, the third-party administrator for AMF's insurer, has documents regarding the applicable claim number that are protected by the work product doctrine, i.e., documents concerning**

**ESIS's investigation of this matter in anticipation of litigation. This includes documents dated from at least as early as around June 2017 onward, because in June 2017, the Plaintiff's counsel advised ESIS that it would be filing suit, which indisputably caused ESIS to reasonably anticipate litigation. Indeed, even prior to June 2017, ESIS could have reasonably anticipated litigation because, among other things, the Plaintiff hired an attorney, declined to provide a recorded statement or medical or employment records, declined to engage in settlement negotiations, and allegedly suffered extremely severe injuries. Responsive documents protected by the work product doctrine include, for instance, internal communications regarding the initial strategy and/or fact investigation for handling the Plaintiff's claim; internal communications in anticipation of litigation regarding the assessment of the amount of reserves and legal expenses; and communications following the Plaintiff's filing suit.**

12. Produce a privilege log of all communications, documents or esi you alleged to be privileged.

**ESIS will produce a privilege log for all documents withheld.**

13. Provide the attached certification of business records.

**ESIS will provide the attached certification of business records for any documents produced for which the certification applies.**

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP

By: */s/ Brigitte Smith*_____
Brigitte J. Smith (Fed. Bar No. 28426)
Brigitte.Smith@wilsonelser.com
Michael J. Silvestri (Fed. Bar No. 30187)
Michael.Silvestri@wilsonelser.com
500 E. Pratt Street, Suite 600
Baltimore, MD 21202-3173
Tel. 410-962-7387
Fax. 410-962-8758
*Counsel for Defendant AMF Bowling Center, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 5th day of August 2020, a copy of the foregoing Defendant's Objections to Plaintiff's Subpoena to Non-Party ESIS, Inc. to Produce Documents, Information, or Objects or to Permit Inspection of Premises was served via the Court's ECF filing system, to all counsel of record, as follows:

Kim Parker, Esquire
The Law Offices of Kim Parker, P. A.
2123 Maryland Avenue
Baltimore, Maryland 21218

Jesse Lyons Crawford, Esquire
The Law Offices of Jessie Lyons Crawford
2601 Maryland Avenue
Baltimore, Maryland 21218

*Counsel for Plaintiff*

*/s/ Brigitte J. Smith*_____
Brigitte J. Smith